**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Guideone Insurance Company, | CV-03-2222-PCT-MHM |
| Plaintiff, | **ORDER** |
| vs. | |
| St. Andrew's Episcopal Church, et al., | |
| Defendants. | |

Currently before the Court is Plaintiff's Motion for summary judgment or in the alternative for summary adjudication (Dkt.#83) and Defendants Corey and Keur's Motion for partial summary judgment. (Dkt. #90). After reviewing the pleadings and hearing argument on March 3, 2006, the Court issues the following order.

**I.      Procedural History**

On February 20, 2004, Plaintiff Guideone Insurance Company ("Plaintiff or "Guideone") filed its First Amended Complaint ("Complaint") in this action. (Dkt.#7). Specifically, Plaintiff's Complaint seeks a declaratory judgment that it is not obligated to provide insurance coverage arising out of two comprehensive general liability policies. Plaintiff named the following parties as Defendants in its Complaint: (1) St. Andrew's Episcopal Church; (2) St. Luke's on the Hill, Diocese of the Western States of the Anglican Province of Christ the King; (3) St. Luke's Episcopal Church; (4) Anglican Diocese of the Southwestern States; (5) Dioceses of the Blessed Sacrament; (6) David McMannes; (7)

1    Madelyn McMannes; (8) Robert Eis; (9) Barbara Yokum; (10) David Debois; (11) Shirley

2    Debois; (12) Mary Shultzman; (13) Mary Blakely; (14) Mary Schwartz; (14) John W. Corey,

3    an individual and as the conservator of the estate of Dorothy Wilcox Smith, a protected

4    person, and as the personal representative of the Estate of Dorothy Wilcox Smith, deceased;

5    and (15) Mary Jane Keur, an individual, and as the surviving heir of Charles William

6    Shipley.

7        Subsequent to filing the Complaint several events occurred eliminating several of the

8    parties from this action.  First, on May 27, 2004, Defendant Anglican Diocese of the

9    Southwestern States and Plaintiff settled and the Court granted the parties stipulation to

10   dismiss (Dkt.#37).  Second, on June 15, 2004, default judgment pursuant to Federal Rule of

11   Civil Procedure 55(a) was entered against Defendant David McMannes (Dkt.#43).  Third,

12   on July 7, 2004, default judgment pursuant to Rule 55(a) was entered against Defendant

13   Dioceses of the Blessed Sacrament (Dkt.#58).  Fourth, on July 15, 2004, Defendant St.

14   Andrews Episcopal Church and Plaintiff settled and the Court granted the parties stipulation

15   to dismiss (Dkt.#64).  Lastly, although not dismissed from this action, the case has been

16   stayed as to Defendant Madelyn McMannes due to her filing bankruptcy.  (Dkt.#81).

17       On May 13, 2005, Plaintiff filed its Motion for summary judgment or in the alternative

18   motion for summary adjudication (Dkt.#83).  Of the remaining Defendants, only Defendant

19   Mary Jane Keur ("Defendant Keur") filed a response. (Dkt#94).  However, Defendants John

20   Corey ("Defendant Corey") and Defendant Keur filed their own motion for partial summary

21   judgment on May 13, 2005. (Dkt#90).  On June 15, 2005, Defendants St. Luke's on the Hill,

22   Diocese of the Western States of the Anglican Province of Christ the King and St. Luke's

23   Episcopal Church joined in Defendants Corey and Keur's motion for partial summary

24   judgment. (Dkt.#93).  On July 7, 2005 Defendant Barbara Yokum joined in Defendant

25   Keur's Response to Plaintiff's Motion for summary judgment and in Defendant Corey and

26   Keur's Motion for partial summary judgment.  (Dkt#98). Defendants David Debois, Shirley

27   Debois, Mary Schultzman, Mary Blakely and Mary Schwartz have not responded to

28

1  Plaintiff's Motion for summary judgment and have not joined with Defendant Corey and
2  Keur's Motion for partial summary judgment.

3  **II.      Factual Background**

4  **(1)      The Policies At Issue**

5  From June 14, 1994 through June 14, 1995, Guideone provided comprehensive general
6  liability coverage, Policy number 1142-010 ("Policy A"), to the named insured of "St. Luke's
7  on the Hill, Diocese of the Western States, Province of Christ the King." (Plaintiff's
8  Statement of Facts ("SOF") ¶1, Defendants Corey and Keur's Statement of Facts ("DSOF")
9  SOF ¶2).   From February 1, 1995 through February 1, 2003, Guideone provided
10 comprehensive general liability coverage, Policy number 1147-134 ("Policy B") to the named
11 insured of "St. Luke's on the Hill, Diocese of the Western States, Province of Christ the
12 King." (SOF ¶ 14, DSOF ¶'s3,4).

13 **(2)      The Underlying Complaint**

14 On September 26, 2002, Defendant Corey as conservator and personal representative of
15 the estate of Dorothy Wilcox Smith ("Ms. Smith") and Defendant Keur as the surviving heir
16 of Charles William Shipley ("Mr. Shipley") filed their first amended complaint ("underlying
17 complaint") in Yavapai Superior Court, CV 2002-0433.  (SOF ¶ 35 and DSOF ¶ 5).  Named
18 as defendants in the underlying complaint are: (1) Reverend David McMannes; (2) Madelyn
19 McMannes; (3) St. Andrew's Episcopal Church; (4) St. Luke's Episcopal Church; (5)
20 Diocese of the Western States of the Anglican Province of Christ the King; (6) St. Luke's
21 (Independent) Episcopal Church; (7) Anglican Diocese of the Southwestern States; (8)
22 Dioceses of the Blessed Sacrament (9) Vestry Members; (10) Robert Eis; (11) Barbara
23 Yokum; (12) David DuBois; (13) Shirley DuBois; (14) Mary Schultzman; (15) Mary
24 Blakely; and (16) Mary Schwartz.  (SOF ¶35, DSOF¶5).  The underlying complaint arises
25 out of the alleged misconduct by Reverend David McMannes in taking advantage of
26 vulnerable adults, Ms. Smith and Mr. Shipley. (SOF ¶'s36-54, DSOF ¶'s 5,6).

27 With respect to Ms. Smith, the underlying complaint relates that in 1985, Reverend
28 McMannes, while serving as the rector at St. Andrews church in Sedona, Arizona, developed

a relationship with Ms. Smith and in September of 1986, took advantage of her in her vulnerable elderly state by bribing her to sell her home, the "Shotgun property," to Reverend McMannes at an unreasonably discounted price and negotiated an unreasonable compromise of the terms of an already unconscionable promissory note governing the sale of Ms. Smith's home. (SOF ¶'s 37-40). The underlying complaint also alleges that Reverend McMannes was terminated from St. Andrews in 1988 and relocated to St. Luke's but continued his relationship with Ms. Smith. In late 1993 early 1994, Revered McMannes, with the aid of his attorney, renegotiated the terms of the promissory note with Ms. Smith, reducing the principal amount from $150,000 to $57,000. (SOF ¶'s 41- 43). Lastly, the underlying complaint relates that in June of 1995, counsel retained by Ms. Smith questioned the terms of the promissory note, but Reverend McMannes was able to convince Ms. Smith to fire her attorney. (SOF ¶44). In November 1997, Defendant Corey was appointed as conservator of Ms. Smith's estate and discovered discrepancies in her account. (SOF ¶53). Ms. Smith passed away on November 9, 2001. (SOF ¶54).

The underlying complaint further alleges that in the early 1990's, Reverend McMannes developed a relationship with Mr. Shipley, who was suffering from the early stages of Alzheimer's disease. (SOF ¶45). In the fall of 1996, Reverend McMannes convinced Mr. Shipley to place Reverend McMannes on Mr. Shipley's bank accounts and caused Mr. Shipley to redraft his Last Will and Testament to establish a number of trusts which placed Revered McMannes in control. (SOF ¶46). On September 24, 2006, Reverend McMannes made a telephone transfer of $1,314.00 from Mr. Shipley's bank account to his own account. (SOF ¶47). After Mr. Shipley passed away on November 25, 1996, Revered McMannes took control of Mr. Shipley's assets including his jeep as well as sold some of Mr. Shipley's property and obtained the benefit. (SOF ¶48-49). On January 7, 1997 and June 6, 1997, Reverend McMannes transferred funds from Mr. Shipley's accounts to a St. Luke's account, transferred the money to his account and used it to pay off his personal credit cards. (SOF ¶'s 50-52).

1    On December 6, 2001 in Yavapai County Court Criminal Case CR82001-0570, Reverend

2    McMannes was indicted on six counts arising out of his unlawful actions. (SOF ¶32).   On

3    February 13, 2003, Reverend McMannes was convicted on the following counts: Count I:

4    Fraudulent Schemes - felony; Count II: Theft-felony; Count III: Money Laundering - felony

5    and Count IV: Perjury - felony. (SOF¶'s 33,34).  On April 29, 2003, a judgment of guilt and

6    sentence was rendered against Revered McMannes. (SOF ¶34).

7    Thus, the underlying complaint asserts that Defendant Reverend McMannes took

8    advantage of Ms. Smith and Mr. Shipley, who were vulnerable adults, in violation of A.R.S.

9    § 46-451. (SOF ¶36).  With respect to the other defendants, the underlying complaint asserts

10   that Defendant Yokum, as treasurer of St. Luke's "knew or should have known" that

11   Reverend McMannes was engaging in this unlawful behavior as well as conspired with him.

12   (SOF ¶55).  The underlying complaint alleges that Defendants St. Luke's, Diocese of the

13   Western States, St. Luke's Independent, Southwestern Diocese, and Sacrament Diocese

14   "knew or should have known" that Reverend McMannes was using his position to the

15   detriment of Ms. Smith and Mr. Shipley.  (SOF ¶55).   Moreover, Defendants Robert Eis,

16   David Dubois, Mary Shultzman, Mary Blakley, Shirley Dubois, Mary Schwartz, and Barbara

17   Yokum, as Vestry Members (the "Vestry Members") of St. Luke's were responsible for and

18   accountable for the financial conduct of the parish and allowed St. Luke's to acquire assets

19   to which the church was not entitled and to make payments to Reverend McMannes from the

20   assets of Mr. Shipley.  (SOF ¶55).

21   The underlying complaint seeks recovery in the form of: (1) treble compensatory damages

22   for the losses sustained by Ms. Smith based upon the full fair market value of the "Shotgun

23   Property" and the amount received by Ms. Smith and the full fair market value of all personal

24   property in the "Shotgun Property"; (2) prejudgment interest owing to Ms. Smith; (3) treble

25   compensatory damages for losses sustained by Mr. Shipley, including the full fair market

26   value of any and all assets of Mr. Shipley, obtained or utilized by Defendants prior to Mr.

27   Shipley's death; (4) treble compensatory damages for the losses sustained by the Shipley

28   estate including the full fair market value of all assets belonging to Mr. Shipley at the time

1  of his death; (5) prejudgment interest owing to Mr. Shipley (6) forfeiture by Defendants of

2  any and all rights to the Shipley estate; (7) cancellation/voiding of any and all trusts created

3  using Mr. Shipley's assets and return of all property placed in any such trust; (8) return of

4  any and all personal property belonging to Mr. Shipley; (9) post-judgment interest; (10)

5  compensation for pain and suffering and mental anguish endured by Mr. Shipley prior to his

6  death; (11) judgment for attorney's fees and costs and (12) such other and any further relief

7  awarded by the Court. (SOF ¶55).

8                      **(3) The Present Declaratory Action**

9       On September 19, 2003, Guideone issued a letter to its named insured informing  that it

10  would provide a "courtesy defense, subject to a full reservation of rights..." to defendants St.

11  Luke's, David McMannes, Robert Eis, Barbara Yokum, David Dubois, Shirley Dubois, Mary

12  Schultzman, Mary Blakely, and Mary Schwartz in response to the underlying complaint

13  asserted by Defendants Corey and Keur in CV2002-0433. (SOF ¶56.  On November 13,

14  2003, Guideone filed the present action seeking a declaratory judgment that it had no duty

15  to defend or indemnify the defendants named in the underlying complaint because neither

16  Policy A or B (the "Policies") afforded any coverage.  On February 20, 2004, Guideone filed

17  its Complaint setting forth the following six claims:  (1) the Policies afford no coverage to

18  Defendants because of the absence of any "bodily injury" or "property damage" under

19  Section A of the Policies' insuring agreement; (2) the Polices afford no coverage because the

20  underlying complaint does seek to recover any  "personal and advertising injury" as stated

21  in Section B of the Policies' Insuring agreement; (3) the Policies afford no coverage because

22  the underlying complaint does not seek damages arising out of an "occurrence" as defined

23  by the Policies;  (4) the Policies afford no coverage because the Policies' "expected or

24  intended" exclusion removes any coverage; (5) the Policies do not afford coverage because

25  the underlying complaint relates to matters that occurred outside the scope of the defendants'

26  duties; and (6) Plaintiff is entitled to reimbursement for the coverage it did provide under a

27  reservation of rights.

28                  **(4) The Cross-Motions For Summary Judgment Before the Court**

1    In moving for summary judgment, Guideone seeks a ruling on all of its claims

2    demonstrating that it not obligated to provide coverage to the Defendants named in the

3    underlying action as well as is entitled to reimbursement for the defense costs it provided

4    under a reservation of rights.

5        Conversely, Defendants Corey and Keur move for partial summary judgment on Plaintiff's

6    First, Third, and Fourth claims in seeking coverage under the Policies.   Specifically,

7    Defendants Corey and Keur contend that: (1) the Policies afford coverage because the

8    underlying suit alleges "property damage" as defined by the Policies; (2) the underlying suit

9    alleges an "occurrence" as defined by the Policies; and (3) the damages alleged in the

10   underlying suit do not fall within the "expected or intended" exclusion in relation to the

11   Defendants named in the underlying complaint other than Defendant Reverend McMannes.

12   **III.        Summary Judgment Standard**

13       A motion for summary judgment may be granted only if the evidence shows "that there

14   is no genuine issue as to any material fact and that the moving party is entitled to judgment

15   as a matter of law." Fed. R. Civ. P. 56(c).  To defeat the motion, the non-moving party must

16   show that there are genuine factual issues "that properly can be resolved only by a finder of

17   fact because they may reasonably be resolved in favor of either party."  Anderson v. Liberty

18   Lobby, Inc., 477 U.S. 242, 250 (1986).  Summary judgment is appropriate against a party

19   who "fails to make a showing sufficient to establish the existence of an element essential to

20   that party's case, and on which that party will bear the burden of proof at trial."  Celotex

21   Corp., 477 U.S. at 322.  The Court views the evidence in the light most favorable to the

22   nonmoving party and draws any reasonable inferences in the nonmoving party's favor.  See

23   Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171

24   (1996).

25   **IV.        Analysis**

26       **A.        Insurer's Duty To Defend And Indemnify**

27       Under a liability policy, the insurer assumes two main express responsibilities: the duty

28   to indemnify and the duty to defend. See, e.g., State Farm Mutual Auto. Ins. Co. v. Peaton,

1  168 Ariz. 184, 192, 812 P.2d 1002, 1010 (Ariz. App. 1990). These two duties are separate

2  obligations. Paulin v. Fireman's Fund Ins. Co., 1 Ariz.App. 408, 410-11, 403 P.2d 555,

3  557-58 (Ariz. App. 1965). However, just because a claim is made against the insured does

4  not mean that the insurer must automatically defend. "[T]he insurer is under an obligation

5  to defend only if it would be held bound to indemnify the insured in case the injured person

6  prevailed upon the allegations of his complaint." Id. at 410, 403 P.2d at 557.  Thus, if the

7  insurer determines that the claim is not covered, it has the option of not accepting the

8  defense. Kepner v. Western Fire Ins. Co., 109 Ariz. 329, 332, 509 P.2d 222, 225 (1973).  The

9  testing of the insurer's liability under a policy may take the form of a declaratory judgment.

10  Id.

11  **B.      This Court's Obligation To Apply Arizona Law**

12      In a diversity case, a district court must follow the substantive law of the state.  Erie R.R.

13  Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817 (1938).  Thus, this Court will look to Arizona

14  law in determining the issues raised by the Policies in this case.  However, where an issue

15  has not been addressed by an Arizona court, this Court must determine the result the Arizona

16  Supreme Court would reach if it were deciding the case.  Molsbergen v. United States, 757

17  F.2d 1016, 1020 (9th Cir. 1985).

18      In Arizona, interpretation of insurance contracts is a question of law for the court to

19  decide.  Benevides v. Arizona Property & Cas. Ins. Guar. Fund, 184 Ariz. 610, 613, 911 P.2d

20  616, 619 (Ariz. App. 1995). "Where no ambiguity exists, the court does not invent ambiguity

21  and resolve it to expand coverage." Id. (citing Thomas v. Liberty Mut. Ins. Co., 173 Ariz.

22  322, 324, 842 P.2d 1335, 1337 (Ariz. App. 1992).  "Generally, the insured bears the burden

23  to establish coverage under an insuring clause, and the insurer bears the burden to establish

24  the applicability of any exclusion.  Keggi v. Northbrook Property and Cas. Ins. Co., 199 Ariz.

25  43, 46, 13 P.3d 785, 788 (Ariz. App. 2000).

26  **C.      Issues Not Disputed**

27      **(1)  Application of the Policies' Intentional Acts Exclusion to Defendant Reverend McMannes.**

28

1   Although a court may not grant a motion for summary judgment simply because the

2   non-moving party does not file opposing material, a court may grant summary judgment

3   when the unopposed moving papers are sufficient on their face and show that no issues of

4   material fact exist. See Henry v. Gill Indus., 983 F.2d 943, 950 (9th Cir.1993). In the present

5   case, Defendant Keur, in responding to Plaintiff's motion for summary judgment concedes

6   several issues of coverage associated with Plaintiff's Motion.  First, Defendant Keur

7   concedes that the Policies' "expected or intended" exclusion excludes any coverage under

8   the Polices for Defendant Reverend McMannes.

9   Both Policies exclude coverage for ""bodily injury" or "property damage" expected or

10  intended from the standpoint of the insured."  (SOF ¶4,17).  Here, as demonstrated by his

11  criminal conviction in Yavapai County, it is clear that Reverend McMannes' conduct of

12  engaging in felonious intentional conduct falls within the scope of this exclusion.  See

13  Phoenix Control Systems v. Insurance Co. of North America, 165 Ariz. 31, 796 P.2d 463,

14  467 (1990). As such, summary judgment on this issue will be granted in favor of Plaintiff.

15

16          **(2)     There Is No Factual Issue Regarding The Potential Application Of
                      The Policies' Provisions Regarding "Personal Injury" Or
17                    "Advertising Injury;" Directors And Officers Liability And
                      Coverage For Equitable Relief.**

18  Defendant Keur concedes several more issues in Response to Plaintiff's Motion for

19  summary judgment.  Specifically, Defendant Keur agrees with Plaintiff that there is no

20  factual issue suggesting coverage would attach based upon the Policies "Personal Injury" or

21  "Advertising Injury" provision.  This provision of the Policies provides in pertinent part:

22  **Section I - Coverages**

23  ***

24  **Coverage B, Personal and Advertising Injury Liability**

25  **1.      Insuring Agreement**

26          a. We will pay those sums that the insured becomes legally obligated to pay as
              damages because of "personal injury" or "advertising injury" to which this
27            insurance applies....
    (SOF ¶'s 5,15).

28

1   As Plaintiff points out, and Defendants agree, this provision is not applicable to the

2   unlawful activities alleged in the underlying complaint.  As such this issue does not warrant

3   any further consideration.  Therefore, summary judgment will be granted to Plaintiff on its

4   second claim regarding the lack of coverage found under this section of the Policies.

5   Moreover, Defendants agree with Plaintiff that Policy B's Directors, Officers and

6   Trustee's endorsement does not provide any potential coverage in this matter.  Specifically,

7   this endorsement was added to Coverage B of Policy B and provides in pertinent part:

8   **The following is added to Coverage B.  Personal and Advertising Injury Liability**

9   **(Section 1 - Coverages)**

10  (a)   We will pay the amount of "loss" your "Directors, Officers or Trustees,"
        individually or collectively, or their estates, heirs, Executors, Administrators or
11         assigns become legally obligated to pay as the result of a "wrongful act"
        committed solely in their capacity as "Directors, Officers, or Trustees."...
12  (SOF ¶28).

13  This endorsement is only applicable to coverage under Section B relating to "Personal and

14  Advertising Injury" of  Policy B, which, as mentioned above, Defendant Keur does not seek

15  coverage under.  As such, because there is no suggestion that coverage would be afforded

16  under the provision, the Court will grant summary judgment in favor of Plaintiff on this

17  issue.

18  Lastly, Defendant Keur does not dispute that the Policies at issue do not provide coverage

19  for any claims of equitable relief stated in the underlying suit.  See Bowen v. Massachusetts,

20  487 U.S. 879 (U.S. 1988) (stating that most general liability policies only apply to "damages"

21  which does not include claims for equitable relief.).  Thus, Plaintiff argues that to the extent

22  the underlying complaint seeks equitable relief, as for example, to cancel or void trusts that

23  were created from Mr. Shipley's estate, there would be no coverage for such claims. Again,

24  Defendants concede this point and do not seek coverage based upon equitable relief.  As

25  such, there is no disputed fact surrounding this issue.

26  **D.  Disputed Issues Regarding Coverage**

27  While the parties do agree that the Policies do not provide coverage in some areas there

28  is dispute as to other areas of the Policies.  Specifically, Defendant Corey and Keur seek

1   partial summary judgment on issues that would provide coverage under Section A of the

2   Policies' Insuring Agreements.   In response to Plaintiff's Motion for summary judgment,

3   Defendant Keur argued in his brief that the Policies actually do provide coverage based upon

4   the underlying suit's allegation of emotional damages which falls within the scope of the

5   "bodily injury" provision of the Policies.   Additionally, in Defendant Corey and Defendant

6   Keur's Motion for partial summary judgment, they contend that the Policies, as a matter of

7   law, afford coverage to the Defendants because the underlying complaint seeks a claim based

8   upon "property damage" arising out of an "occurrence" as defined by the Policies.   Lastly,

9   they contend that the application of the Policies' "expected or intended" exclusion has no

10  application as a matter of law to the Defendants other than Defendant Reverend McMannes.

11                 **(1) The Policies' Scope Of Coverage.**

12      Both Policy A and B possess identical statements of coverage for its insureds under

13  Coverage A of Section I of the Policies.   This is the only section of coverage to which

14  Defendants seek coverage.   Specifically, the Policies provides in pertinent part:

15  **Section I - Coverages**

16  **Coverage A. Bodily Injury And Property Damage Liability**

17  **1.        Insuring Agreement**

18          We will pay those sums that the insured becomes legally obligated to pay as
19          damages because of "bodily injury" or "property damage" to which this insurance
            applies....

20          ***

21  (b)     This insurance applies to "bodily injury" and property damage" only if:

22          (1) The "bodily injury" or "property damage" is caused by an "occurrence" that
23              takes place in the "coverage territory"; and

24          (2) The "bodily injury" or "property damage" occurs during the policy period.

25  (SOF ¶2,16, DSOF ¶7).

26                 **(a) The Policies' Coverage For "Bodily Injury"**

27      The Policies define "bodily injury" as "bodily injury, sickness or disease sustained by a

28  person, including death resulting from any one of these at any time."   (SOF ¶9,22).   In

1   Defendant Keur's response to Plaintiff's Motion for summary judgment, Defendant Keur

2   argued the existence of a "bodily injury" as defined by the Policies.  Specifically, Defendant

3   Keur cited the portion of the underlying complaint stating that Mr. Shipley suffered

4   emotional damages over a long period of time resulting from the gradual loss of his financial

5   security.  (Defendant Keur's Statement of Facts in support of Response to Plaintiff's motion

6   for summary judgment, ¶1). However at oral argument, Defendant Keur's counsel conceded

7   the absence of any allegation suggesting the existence of a "bodily injury" in the underlying

8   complaint.  Moreover, in reviewing the papers presented and the state of the law in Arizona

9   it is clear that any reliance on Mr. Shipley's emotional damages as "bodily injury" is

10  misplaced.  See Transamerica Ins. Co. v. John and Jane Doe, 173 Ariz. 112, 114, 840 P.2d

11  288, 290 (Ariz. App. 1992) (rejecting the argument that a claim for "bodily injury" under the

12  language of the underinsured motorist policy could be made based upon anxiety and

13  emotional damages of insureds resulting from fear of contracting AIDS after treating victim

14  involved in traffic accident.).  Thus, there is no factual issue suggesting the existence of

15  "bodily injury" as defined by the Policies in the underlying complaint.

16                  **(b) The Policies Coverage For "Property Damage"**

17      Considering that the underlying complaint does not touch on "bodily injury," as defined

18  by the Policies, the next obvious question in determining if coverage applies to the

19  Defendants is whether the underlying complaint asserts  "property damage" thus bringing it

20  within the scope of coverage.  The Policies define property damage as:

21      a.      Physical injury to tangible property, including all resulting loss of use of that
               property.  All such loss of use shall be deemed to occur at the time of the physical
22             injury that caused it; or

23      b.      Loss of use of tangible property that is not physically injured.  All such loss shall
               be deemed to occur at the time of the "occurrence" that caused it.
24  (SOF ¶'s12,25).

25      Defendant Corey and Keur do not seek coverage under the first prong of the definition

26  of "property damage," but rather rely only on the second prong.  Defendant Keur argues that

27  because the underlying complaint alleges that Mr. Shipley lost the use of his tangible

28  property when Reverend McMannes wrongfully acquired his jeep and real property and

1   withdrew cash from Mr. Shipley's bank account that a claim falling within the scope of

2   "property damage" has been sufficiently alleged.  Additionally, Defendant Keur argued at

3   oral argument that had Plaintiff intended to exclude such claims based upon "property

4   damage" it easily could have done so with a more exact definition of "property damage" or

5   with the plain language of an exclusion.  However, the Court finds that Defendant Keur's

6   arguments to invoke "property damage" fail for several reasons.

7                **(i) The Underlying Complaint Does Not Allege "Loss of Use."**

8        First, completely absent from the underlying complaint is any request to recover "loss of

9   use" damages regarding the assets wrongfully acquired by Reverend McMannes.  Rather, the

10  underlying complaint seeks only to recover possession of the assets and/or the full market

11  value of these assets wrongfully acquired.  (SOF ¶55).  The significance is that there is no

12  allegation in the underlying complaint seeking to recover damages based upon either prong

13  of the Policies' definition of "property damages."  In other words, there is no claim to recover

14  damages based upon physical injury to any of these assets nor is there is any claim for

15  damages based upon "loss of use" of these assets.  Therefore, there is no claim that falls

16  within the scope of the Policies "property damage" based upon <u>loss of use</u> of tangible

17  property not physically injured. (emphasis added).  This point is exemplified in <u>Sony</u>

18  <u>Computer Entertainment America v. American  Home Ins. Co.</u>, 2005 WL 2137772 (N.D.

19  Cal. 2005).  In <u>Sony</u>, in applying a "property damage" provision identical to the provision

20  in this case, the district court explained that the insurer was not obligated to provide coverage

21  to <u>Sony</u>, the manufacturer of the Sony Playstation 2002 product, where the third-party

22  underlying complaint did not seek damages for the new games or movie disks, but rather,

23  sought only compensation for the costs of repairing the insured's defective product, *i.e.*, the

24  Sony Playstation 2002.  <u>Id.</u> at * 4.  The district court noted that "in order to show "loss of

25  use," the plaintiff must request damages equivalent to the "rental value of similar property

26  which the plaintiff can hire for use during the period when he is deprived of the use of his

27  own property." (citing <u>Collin v. American Empire Ins. Co.</u>, 21 Cal.App.4th 787, 818, 26

28  Cal.Rptr.2d 391 (1994); <u>see also</u> <u>Farmers Ins. Co. of Arizona v. R.B.L. Inv. Co.</u>, 138 Ariz.

562, 565, 675 P.2d 1381, 1384 (Ariz. App. 1983) (citing that "where the plaintiff's claim is one for the loss of use of his property, the rental value of the property during the period in which the plaintiff was deprived of it is often one element of damages he is allowed to recover."); <u>Home Idem. Co. v. Bush</u>, 20 Ariz.App. 355, 361, 513 P.2d 145, 151 (Ariz. App. 1973) (stating that "damages for loss of use of vehicle are measured by the reasonable rental value therefor at the time of the loss.") (citation omitted).  Thus, because the underlying complaint in <u>Sony</u> did not seek any such "loss of use" damages, coverage was not triggered. <u>Id.</u>

The same is true here.  In the present case, the underlying complaint seeks no relief based upon the recovery of the reasonable rental value of the assets wrongfully acquired by Reverend McMannes.  The underlying complaint seeks only to recover the fair market value of these assets and/or to simply recover the assets to the extent possible.   As such, the application of second prong of "property damage" regarding "loss of use of tangible property that is not physically injured" is not applicable.

### (ii)  The Underlying Complaint Does Not Relate Any Physical Injury To Property

Second, even if the underlying complaint did seek to recover "loss of use" damages for the property and assets wrongfully acquired by Reverend McMannes, the underlying complaint is wholly absent of any hint of actual physical damage associated with the assets wrongfully acquired by Reverend McMannes.  Although Defendant Corey and Keur seek coverage under the second prong of "property damage" which provides coverage for "loss of use of property that is not physically injured" there still needs to be some indication of actual damage to property for this prong to apply.  At oral argument, Defendant Corey and Keur's counsel conceded the absence of any such damage, but argued that none was necessary to invoke coverage under the second prong of the Policies' definition of "property damage."  However, Plaintiff's persuasive reliance on the Ninth Circuit's holding in <u>Anthem Electronics, Inc., v. Pacific Employers Ins. Co.</u>, 302 F.3d 1049 (9th Cir. 2002) is instructive in rejecting this contention.

1    In Anthem, in reversing the district court, the Ninth Circuit explained that general liability

2  policies are not meant to provide insureds with coverage against claims for inferior or

3  defective work, "[r]ather liability coverage comes into play when the insured's defective

4  materials or work cause injury to property other than the insured's own work or products."

5  Id. at 1057  (emphasis added).  In Anthem, the Ninth Circuit held that because the insured's

6  defective circuit boards caused damage to the overall scanners, causing them to be

7  inoperable, it found that "property damage" provision of the policy was triggered which

8  afforded coverage to "loss of use of tangible property, even if the property itself is not itself

9  physically injured."  Id.

10    The Ninth Circuit cited several other cases to demonstrate this point.  For instance, in

11  Hendrickson v. Zurich Am. Ins. Co., 72 Cal.App.4th 1084, 1091-92, 85 Cal.Rptr.2d 622

12  (1999) the court held that where the insured strawberry plant supplier sold defective plants,

13  the supplier was covered for liability stemming from the lost use of the land on which the

14  plants were grown, unproductively.  Moreover, in Travelers Ins. Co. v. Pendra Corp., 974

15  F.2d 832-33 (7th Cir. 1992) the court held that where the insured supplied defective pages for

16  incorporation into a larger book, that the insured was covered for liability stemming from the

17  lost use of the entire book, while the pages were replaced.

18    Thus, the key to applying the "loss of use" provision regarding the scope of "property

19  damage" is the existence of some defect or physical damage to the property.  Here, the

20  underlying complaints speaks nothing of damage to the property and assets at issue.  Rather,

21  the underlying complaint speaks only of recovering the full fair market value of the assets

22  wrongfully acquired by Revered McMannes and recovery of any such assets.  Although there

23  does not appear to be any express Arizona authority on this issue, the weight of authority

24  requires the existence of actual damage.  Thus, because there is no indication of any actual

25  damage to any property that would invoke liability coverage based upon "property damage"

26  the "loss of use" provision does not apply.

27         **(iii)  The Underlying Complaint's Claim For Conversion Does Not Assert
                "Property Damage"**

28

1      Lastly, as discussed above, the underlying complaint seeks to recover the fair market value

2   and/or the return of the property and assets based upon the conduct of Defendant Reverend

3   McMannes and the other Defendants.  Such claims for relief are akin to the tort claim for

4   conversion.  See Focal Point, Inc., v. U-Haul Co. of Arizona, Inc., 155 Ariz. 318, 746 P.2d

5   488 (Ariz. App. 1986) (stating that according to the Restatement (Second) of Torts,

6   "conversion" is "an intentional exercise of dominion or control over a chattel which so

7   seriously interferes with the right of another to control it that the actor may justly be required

8   to pay the other the full value of the chattel.") (Underlying Suit, ¶ 45(a),(c),&(h)).  However,

9   a claim for conversion of property does not touch on the issue of "property damage."   As

10  explained in Collin v. American Empire Ins. Co., 21 Cal.App.4th 787, 408, 26 Cal.Rptr.2d

11  391, 408 (Cal.App. 1994) a claim for "conversion of property is not "property damage."" In

12  finding such, the appellate court reversed the trial court's determination that coverage was

13  afforded under the applicable commercial general liability policy because the definition of

14  "property damage" also included "loss of use" of property.  Id.   Specifically, the appellate

15  court held ""Loss of use" of property is not the same as "loss" of property."  Id.  The

16  appellate court in reviewing the definition of "property damage," which was identical to the

17  definition at issue in the instant case, found that in reviewing other jurisdictions, that virtually

18  every other court that has addressed whether "conversion" is "property damage" has found

19  that it is not covered.  Id.  (citing Nortex Oil & Gas, Corp. v. Harbor Insur. Co., 456 S.W.2d

20  489, 493 (Tex.App. 1970) (stating "[t]here is a material difference between 'property taken'

21  and 'property damaged.'); Travelers Ins. Companies v. P.C. Quote, Inc., 211 Ill.App.3d 719,

22  570 N.E.2d 614, 618 (Ill.App. 1991) (stating "[t]here is a difference between damage to

23  property and loss of property.")(citations omitted)); Inland Const. Corp. v. Continental Cas.

24  Co., 258 N.W.2d 881, 885 (Minn. 1977) (stating that insurer was not required to defend its

25  insured under a general liability policy of insurance when the insured is sued for converting

26  personal property and the pleadings filed against the insured contain no allegations of

27  "property damage" within the contemplation of insurance coverage).   The court in Collins

28  explained that had the policy affording coverage for "loss of use" of tangible property

1  intended to provide coverage for converted property, the policy would have made clear that

2  "loss of property" is covered.  Id. at 818-19.  However, because the policy afforded no such

3  coverage and the damages sought by the underlying complaint sought  were not "loss of use"

4  damages but the value of the property itself, that coverage based upon "property damage"

5  was inapplicable.  Id.

6      The same is true here.  As explained above, the underlying complaint seeks to recover

7  damages not for the "loss of use" of property but rather to recover compensation in the form

8  of the fair market value of the  property that was wrongfully converted and/or the return of

9  such property.  As such, the Policies' provision of "property damage" is not invoked by the

10  underlying complaint.

11      In sum, the underlying complaint does not assert "property damages" as defined in the

12  Policies in this case.  Therefore, summary judgment is appropriate regarding claim one of

13  Plaintiff's declaratory Complaint because the underlying complaint does not invoke coverage

14  based upon "bodily injury" or "property damage."

15          **(c) The Policies' Application Of An "Occurrence" And The "Expected Or**
              **Intended" Acts Exclusion.**
16

17      Plaintiff additionally contends that the Policies afford no coverage to the Defendants in

    this  matter,  because  the  requisite  "occurrence"  did  not  take  place  triggering  coverage.
18
    Specifically, the Policies provide in pertinent part:
19
    **Section I - Coverages**
20
    **Coverage A. Bodily Injury And Property Damages Liability**
21
    **1.       Insuring Agreement.**
22
            ***
23
            b. This insurance applies to "bodily injury" and "property damage" only if
24
              (1) The "bodily injury" or "property damage" is caused by an "occurrence."
25
            ***
26
    **Section V - Definition**s
27
            ***
28

1           (9) "Occurrence" means an accident including continuous or repeated
                    exposure to substantially the same generally harmful conditions.

2  (SOF ¶10,23).

3     To dispute the contention that an "occurrence" had taken place, Defendants rely on the

4  claims asserted in the underlying complaint suggesting that they "knew or should have

5  known" that Defendant Reverend McMannes was engaging in the unlawful conduct at issue.

6  Such a claim is akin to a claim for negligent supervision.  Although the area of law on this

7  topic is unclear in Arizona and elsewhere, it appears that other courts have found that an

8  "occurrence" can be found based upon such a claim.  See Interstate Fire & Cas. Co. v.

9  Archdiocese of Portland, 35 F.3d 1325, 1329 (9th Cir. 1994) (holding that repeated exposure

10  of boy to negligently supervised priest, resulting in injury provides the basis for

11  indemnification and invoked Policies' definition of "occurrence").

12     Here, as Defendants point out, the underlying complaint suggests that the Defendants

13  failed to supervise the actions of Defendant Reverend McMannes.  As such, this Court

14  cannot say, as a matter of law, that the allegations regarding the Defendant's failure to

15  supervise Defendant Reverend McMannes failed to invoke an "occurrence" as defined by the

16  Policies.  However, that being said, as explained above, this analysis is not dispositive in

17  favor of coverage, because the threshold elements of "bodily injury" and "property damage"

18  have not been invoked, therefore, eliminating any obligation of coverage, thus the Court will

19  make no express ruling on this issue.

20     The same is true with respect to the application of the "expected or intended" exclusion

21  upon which the parties dispute.  Specifically, Plaintiff contends that if any coverage was

22  found under the Policies, it was removed because of Defendant Reverend McMannes'

23  expected and intended acts with respect to Ms. Smith and Mr. Shipley.  Defendant on the

24  other hand contests such a notion based upon the language of the exclusion applying only to

25  "the insured" rather than "an insured."  See United Services Auto Ass'n v. DeValencia, 190

26  Ariz. 436, 949 P.2d 525 (Ariz. App. 1997) (stating that where insurance policy contains

27  separation of insurance clause, exclusions are applied separately to each insured).  However,

28  only if coverage is found in the insuring agreement does the Court need to determine whether

an applicable exclusion would remove it. <u>Pacific Indem. Co. v. Kohlhase</u>, 9 Ariz. App. 595, 597, 455 P.2dd 277, 279 (App. Ariz. 1969).  Thus, here while the application of the "expected or intended" exclusion of the Policies may apply only to Defendant Reverend McMannes for his negligent acts, such determination does not assist bringing coverage back to the Defendants because coverage was never found under the insuring agreement.

### (d) Reimbursement

Lastly, Plaintiff seeks summary judgment based upon its claim for reimbursement. Specifically, Plaintiff contends that because it properly reserved its rights in its letter to the insureds named in the underlying complaint that it is entitled to reimbursement for indemnity, defense costs, attorney's fees and costs of suit based upon this Court's finding that it is not obligated to defend or indemnify the insureds under the Policies.

Plaintiff cites the language of the reservation of rights letter issued to the Defendants named in the underlying complaint on September 19, 2003.  (SOF ¶65).  Specifically, the letter relates in pertinent part to the Defendants:

> This reservation of rights includes a reservation of the right to recover from any insureds, and/or from any other insurer or any other parties, any payments made by Guideone, including payments for indemnity, defense costs and expenses, attorneys' fees and costs of suit.

(Id.).

Based upon the language of this letter, Plaintiff requests that it is entitled to reimbursement as a matter of law.[1]  Persuasive support for this position can be found in the  holding set forth in <u>Capitol Indem. Corp. v. Blazer</u>, 51 F. Supp.2d 1080, 1090 (D.Nev. 1999). In <u>Capitol</u>, the defendant insurer, as in this case, sought and achieved a declaratory judgment  that it was not obligated to provide a defense or indemnity to its insured.  In moving for summary judgment on the coverage issue, the plaintiff insurer also sought summary judgment on its claim for reimbursement.  <u>Id.</u>  In denying the insurer's request the district court noted that "[t]he right to reimbursement does not arise unless there is a clear understanding between the parties that

---

[1]Defendants offer no argument to dispute Plaintiff's position regarding reimbursement.

1   the insured would be required to reimburse the insurer for monies expended in providing a

2   defense.  Id. (citing St. Paul Mercury Ins. Co.,v. Ralee Engineering Co., 804 F.2d 520, 522

3   (9th Cir. 1986).   Thus, because the plaintiff insurer produced no evidence of any such

4   understanding, and it failed to show that it reserved its rights to reimbursement, its request

5   for reimbursement was denied.

6       Conversely, in Omaha Indem. Ins. Co. v. Cardon Oil Co., 687 F. Supp 502 (N.D. Cal.

7   1988) the district court held, in applying California law, that the declaratory plaintiff insurer,

8   upon finding that it was not obligated to provide coverage to its insured, had properly

9   reserved its rights and its entitlement to reimbursement for costs associated with the defense.

10  Specifically, the court held that the insurer's "reservation of rights letter explicitly advised

11  defendants that it was reserving its right to seek reimbursement and would seek such

12  reimbursement in a court action. Id. at 504.  The reservation language used in Omaha, was

13  similar to the language used by the Plaintiff in our case in that it expressly advised the

14  insured that the insurer was reserving its rights to recover from the insured payments made

15  by the insurer for the coverage afforded.  Id.  Because the insured did not contest the

16  reservation language but rather appeared to have acquiesced to the terms specified in the

17  reservation letter the court held the language to be controlling and supported the insurer's

18  request. Id.

19      The same is true here.  Although, there does not appear to be any Arizona case on point,

20  it appears the weight of authority permits reimbursement under such circumstances.  There

21  is no evidence suggesting that the insureds' disputed the plain terms of the reservation of

22  rights coverage afforded to them.  Rather, the evidence suggests that like Omaha, the

23  insureds accepted or at the very least acquiesced to the terms of the coverage afforded to

24  them.  As such, the Plaintiff is entitled to reimbursement for the costs associated with the

25  coverage afforded to the Defendants in the underlying action.

26  **V.        Conclusion**

27      Of the disputed matters raised in the pleadings regarding the cross-motions between the

28  parties, it is clear that the Policies do not afford coverage to the Defendants based upon the

allegations set forth in the underlying complaint.  The threshold elements of coverage based upon either "bodily injury" or "property damage" are wholly absent from the underlying complaint. Additionally, there is no dispute that the Policies do not afford coverage under Section I(B) of the Policies Insuring Agreement.  Therefore, the subsequent issues of whether the underlying complaint invokes an "occurrence" or whether coverage is excluded based upon the Policies exclusion for expected or intended acts by the insured is not dispositive. Further, the Plaintiff is entitled to reimbursement for the costs incurred in supplying a defense subject to the terms of the reservation of rights to the Defendants.

**Accordingly,**

**IT IS HEREBY ORDERED** that Plaintiff's Motion for summary judgment is granted in part and denied in part.  Plaintiff's Motion is granted with respect to its First, Second and Sixth declaratory claims for relief. (Dkt.#83).   Plaintiff's Motion is denied as moot as to its Third, Fourth and Fifth declaratory claims.  Therefore, Plaintiff is not obligated to provide a defense or indemnify the Defendants pursuant to the terms of the Policies.  Additionally, Plaintiff is entitled to reimbursement for the costs of the defense it did provide to the Defendants named in the underlying complaint.

**IT IS FURTHER ORDERED** that Defendant Corey and Keur's Motion for partial summary judgment is denied regarding Plaintiff's First declaratory claim and denied as moot as to Plaintiff's Third and Fourth declaratory claims.  (Dkt.#90).

DATED this 25th day of March, 2006.

Mary H. Murguia
United States District Judge